**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>LONNIE EARL COVER,<br><br>                    Defendant. | Case No. 2:12–cr–277–APG–VCF<br><br>**REPORT & RECOMMENDATION** |

This matter involves the United States' prosecution of Lonnie Earl Cover for failing to register as a sex offender in violation of 18 U.S.C. § 2550(a). Before the court is Cover's Motion to Dismiss (#83[1]). The government filed an opposition (#86); and Cover replied (#88). For the reasons stated below, the court recommends granting Cover's Motion to Dismiss.

**BACKGROUND**

Twenty-six years ago, Lonnie Earl Cover was convicted of a sex crime and required to register as a sex offender for the rest of his life. (Compl. (#1) at ¶ 4). In April of 2012, Cover—who is homeless—came to Las Vegas, Nevada, moved into a shelter, and failed to register as a sex offender. (*Id.* at ¶ 11); (Sealed BOP Eval. (#51-1) at 2). He is now being prosecuted for that offense. *See* 18 U.S.C. § 2550(a).

Plea negotiations began immediately. Between October 2, 2012, and June 25, 2013, the parties filed four stipulations to continue trial while they negotiated a plea agreement. The government's proposed plea agreement offers to reduce Cover's base-level offense under United States Sentencing Commission Guidelines from level 16 to level 9 "because the defendant was prevented from registering due to uncontrollable circumstances." (Sealed Gov't Opp'n (#86) at 4:5–21). This downward adjustment

---

[1] Parenthetical citations refer to the court's docket.

would reduce Cover's incarceration from four years to two years. (*Id*.) Because Cover has been in custody for two years and fifty-eight days, he would be released if he were competent to accept the plea agreement.

But, Cover is mentally ill. This required the court to commit Cover to the custody of the Attorney General "for a reasonable period of time, not to exceed four months" to determine "whether there is a substantial probability" that Cover will become competent "in the foreseeable future." *See* 18 U.S.C. § 4241(d)(1); (Order (#46) at 1:20–23; 2:2–7). This occurred on September 30, 2013. (*Id*.) Three-and-a-half months later, the Bureau of Prisons completed a forensic evaluation, and determined that Cover "remains not competent to proceed to trial." (Sealed BOP Eval. (#51-1) at 1).

Cover is schizophrenic. He "cannot carry on a rational conversation for any extended period of time. His thought processes are so disorganized he [cannot] assist his attorney by providing rational or relevant information. He also [cannot] testify relevantly if needed to do so." (*Id*. at 7). He cannot "maintain a reality based understanding of his legal situation" and "does not believe he has a mental illness." (*Id*. at 4, 6). He also believes that his prosecution and confinement are the result of a government conspiracy and "feels [that] those who don't agree with [him] are part of the conspiracy." (*Id*. at 4).

This renders Cover not competent to understand the charges against him or to assist in his defense. He cannot accept the government's plea agreement, which would result in his release, or decide to proceed to trial, in which case he would risk two additional years of confinement. (*Id*. at 4:22–23). Ordinarily, these circumstances would leave the U.S. Attorney's Office with three options: (1) commence civil commitment proceedings against Cover under 18 U.S.C. §§ 4246, 4248; (2) dismiss the indictment; or (3) request the forcible administration of antipsychotic drugs to restore Cover's competence.

The first option is unavailable. On June 23, 2014, the court ordered a second forensic evaluation "for an additional reasonable period of time" to determine (1) whether Cover's condition would improve within "the foreseeable future [so that] trial [may] proceed" or (2) whether Cover should be civilly committed. *See* 18 U.S.C. § 4241(d)(2); (*see also* Min. Order (#69) at 2:1–2).

Fifty-one days later, the Bureau of Prisons completed the second forensic evaluation, and determined that Cover is still schizophrenic and that "his prognosis for improvement is poor." (Aug. 14, 2014 Eval. at 7); (Doc. (#51-1) at 7). The Bureau of Prisons also determined that Cover is not a dangerous person under 18 U.S.C. § 4248 and that he does not pose a substantial risk of bodily injury to another person or serious damage to the property of another under 18 U.S.C. § 4246. (Aug. 14, 2014 Eval. at 1). This precludes civil commitment.

The second option—dismissal—is Cover's preference. He has been in custody for 784 days. (*See* Mins. Proceedings #15) (remanding Cover to custody following his August 10, 2012, arraignment). He has undergone multiple forensic evaluations, served more than the two-year sentence offered by the government's plea agreement, and been deemed not dangerous. Additionally, the Bureau of Prisons reports that restoring Cover's competency through forcible medication will require at least four additional months of pretrial detention. (Doc. (#51-1) at 1).

The third option—forcibly medicating Cover—is the government's preference. The government argues that the court should commit Cover a third time for an additional four months and order him to be forcibly medicated under *Sell v. United States*. The purpose of restoring Cover's competency, the government argues, is to give him a choice: accept the government's plea agreement and be released or proceed to trial and risk being sentence to an additional two years of imprisonment.

If the court orders Cover to be forcibly medicated, there is approximately a 76% chance that Cover's competency will be restored. (BOP Eval. (#51-1) at 11). However, there is also a 60-to-70%

3

chance that Cover—who is homeless—will relapse within one year and a 90% chance that he will relapse within two years. (*Id*. at 2, 12).

## DISCUSSION

The parties' filings ask the court to decide whether Cover should be forcibly medicated under *Sell v. United States* or released under the Due Process Clause and *Jackson v. Indiana*. Stated differently, the parties' filings present the following question. Should Cover be forcibly medicated so that he can make a Hobson's choice:[2] accept the plea agreement and be released or risk being convicted and sentenced to two additional years of incarceration?  The court begins its discussion with the relevant law.

### I.     **The Fifth Amendment & Mental Competency**

The Fifth Amendment's Due Process Clause states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Supreme Court has determined that this provision creates two rights that are relevant here. The Fifth Amendment (1) prohibits the government from putting the mentally ill on trial and (2) provides the mentally-ill with a "significant" constitutionally-protected liberty interest in "avoiding the unwanted administration of antipsychotic drugs." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)) (right to a fair trial); *Sell v. United States*, 539 U.S. 166, 178 (2003) (citing *Washington v. Harper*, 494 U.S. 210, 221 (1990)) (right to be free of unwanted medication).

However, these rights are not absolute. A mentally-ill defendant's Fifth Amendment rights must be balanced against the government's countervailing interests in "bring[ing] an accused to trial" and maintaining a "fundamental . . . scheme of 'ordered liberty.'" *Illinois v. Allen*, 397 U.S. 337, 347 (1970)

---

[2] A Hobson's choice is a choice with one option. *See* MERRIAM-WEBSTER, 550 (10th ed. 2001) ("an apparently free choice when there is no real alternative").

(Brennan, J., concurring) (cited with approval in *Riggins v. Nevada*, 504 U.S. 127, 135–36 (1992)). In this case, the question of whether the government's interests outweigh Cover's rights is governed by three authorities: (1) 18 U.S.C. § 4241, (2) *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), and (3) *Sell v. United States*, 539 U.S. 166, 182 (2003).

The first two authorities, 18 U.S.C. § 4241 and *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), limit the length of time that a mentally-ill defendant may be hospitalized before trial. If the court concludes that a defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent" to stand trial, the court must "commit the defendant to the custody of the Attorney General" for a forensic evaluation. *See* 18 U.S.C. § 4241(a), (d).

The statute places two limits on the amount of time that a mentally-ill defendant may be held in custody before trial. First, subsection (d)(1) states that the government may hospitalize the defendant "for such a reasonable period of time, not to exceed four months." The purpose of this initial hospitalization is to determine "whether there is a substantial probability" that the defendant will attain capacity "in the foreseeable future." *See* 18 U.S.C. § 4241(d)(1).

Second, "if the court finds that there is a substantial probability" that the defendant will attain capacity "in the foreseeable future," then subsection (d)(2) authorizes the government to hospitalize the defendant "for an additional reasonable period of time." The purpose of this period of hospitalization is to wait for (1) the defendant's condition to improve so that trial may proceed or (2) the charges to be "disposed of according to law." *See* 18 U.S.C. § 4241(d)(2). Although subsection (d)(2) does not contain an explicit time limit, *see, e.g.*, *United States v. Magassouba*, 544 F.3d 387, 406–08 (2d Cir. 2008), the Due Process Clause "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The third authority, *Sell v. United States*, governs whether the government may forcibly medicate a mentally-ill criminal defendant within the time prescribed under 18 U.S.C. § 4241 and *Jackson v. Indiana*. Forcible medication is permissible only when (1) there are important government interests in trying the individual, (2) the treatment will significantly further those interests, (3) the treatment is necessary to further those interests, considering any less intrusive alternatives, and (4) the treatment is medically appropriate. *Sell*, 539 U.S. at 180–81. The government bears the burden of demonstrating each element by clear and convincing evidence. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010).

## II.     Whether the Length of Cover's Hospitalization is Reasonable

The first question the parties' papers present concerns reasonableness: whether "the nature and duration" of Cover's continued incarceration "bears some reasonable relation" to "the purpose for which [he] is committed." *Jackson*, 406 U.S. at 738; 18 U.S.C. § 4241(d)(2).

Here, the proposed "nature and duration" of Cover's detention involves a four-month hospitalization with the Federal Bureau of Prisons. During this time, the government will repeatedly inject Cover with antipsychotic drugs against his will, despite his Fifth Amendment rights. The purpose of this ordeal: to enable Cover to choose his freedom—a state that our country's founding documents say no person bears the burden of securing from the government.[3]

This is unconstitutional. Although Cover lacks the competence to assist in his defense, he is presumed innocent and retains the ability to choose to be free. Rather, the government bears burden: it must either criminally convict or civilly commit. *Jackson*, 406 U.S. at 738 (holding that the government

---

[3] THE DECLARATION OF INDEPENDENCE para. 2 (U.S. 1776) ("[A]ll men are . . . endowed by their Creator with certain unalienable Rights, [including] Life, Liberty and the pursuit of Happiness"); THOMAS PAINE, RIGHTS OF MAN (1791) ("Rights are inherently in all the inhabitants"); JOHN LOCKE, THE SECOND TREATISE OF CIVIL GOVERNMENT, Ch. VII § 87 (1690) ("Man being born, as has been proved, with a title to perfect freedom").

must set a defendant free if they cannot criminally convict or civilly commit). It cannot prolong a criminal defendant's pretrial detention merely because that defendant is mentally ill. *Id*.

This is especially true here. The Bureau of Prisons determined that Cover is not dangerous and poses no risk of injury to people or property. (*See* Aug. 14, 2014 BOP Eval. at 1). The crime Cover is accused of committing—failing to register as a sex offender—is a "purely regulatory offense." *Gonzalez v. Duncan*, 551 F.3d 875, 885–86 (9th Cir. 2008) (citing, *inter alia*, *Solem v. Helm*, 463 U.S. 277, 292 (1983)). It "involve[s] neither violence nor the threat of violence" and requires "actual knowledge of the duty to register," *see id*., which the government appears to concede that Cover may have lacked. (*See* Sealed Gov't Opp'n (#86) at 4:14–16) ("The plea agreement also included an additional three level reduction because the defendant was prevented from registering due to uncontrollable circumstances.").

The court holds that Cover's continued incarceration is unconstitutional—not to admonish the government, which has fulfilled its duty to "seek justice" and safeguard the public from a suspected criminal—but to protect a basic constitutional principle on which all can agree: that an accused's Due Process rights are not conditioned on one's mental faculties or competency to accept a plea agreement. (*See* Def.'s Reply (#88) at 6:2–3). This principle is captured by the Supreme Court's decision in *Jackson v. Indiana*. It directs the court to decide whether a mentally-ill defendant's continued pretrial detention is reasonable under the circumstances. Here, the court finds that Cover's continued pretrial detention is unreasonable for three reasons.

First, as stated above, Cover's continued pretrial detention is unreasonable because it creates a Hobson's choice. The government moves to restore Cover's competency so he may choose between release and trial with the possibility of two additional years of incarceration. Cover has been incarcerated for 784, including hospitalization for 153 days. If he were to accept the government's plea agreement—which he cannot because he is schizophrenic—he would be released. Because Cover lacks

7

legal competency to accept the government's offer, it requests forcible medication under *Sell v. United States*. This means that the government would release Cover but for his schizophrenia. This erroneously places the burden of choosing freedom on Cover and, therefore, violates the Due Process Clause. It deprives Cover of his freedom, despite the facts that he cannot be civilly committed or criminally tried. *See Jackson*, 406 U.S. at 738.[4]

Second, Cover's continued incarceration is unreasonable because it is futile. The government moves to extend Cover's incarceration and forcibly medicate him so that Cover may choose between release and the possibility of being convicted and sentenced to two additional years of confinement. If Cover's competency is restored—which is not a guarantee—then there is a 60-to-70% chance that he will relapse within one year and a 90% chance that he will relapse within two years. Because Cover is homeless, relapse is inevitable. Therefore, continuing Cover's pretrial detention merely delays the inevitable: release and relapse. This is unreasonable. *Jackson*, 406 U.S. at 738; 18 U.S.C. § 4241(d)(2).

Third, Cover's continued incarceration is unreasonable because, as the government concedes, Cover appears to have acted without fault. (*See* Doc. (#86) at 4:14–16) ("The plea agreement also included an additional three level reduction because the defendant was prevented from registering due to uncontrollable circumstances."). Failing to register as a sex offender is not a strict liability offense. *See Duncan*, 551 F.3d at 885–86 (citing, *inter alia*, *Helm*, 463 U.S. at 292). It is a "purely regulatory offense" that "involve[s] neither violence nor threat of violence to any person" and requires "actual knowledge of the duty to register."

The government cites *United States v. Nicklas*, 623 F.3d 1175, 1177–78 (8th Cir. 2010) for the proposition that Cover poses a threat to the public. (*See* Gov't's Opp'n (#86) at 5:18). The court is

---

[4] Because the parties have not briefed the matter, the court makes no finding on whether Cover's continued incarceration violates the Equal Protection Clause. *See Jackson*, 406 U.S. at 724.

unpersuaded. *Nicklas* involved a "misdemeanor terroristic threat" under state law and a subsequent prosecution under 18 U.S.C. § 875(c) for transmitting interstate threats. 623 F.3d at 1175. Cover's alleged crime—failing to register as a sex offender—is incomparable as a matter of law and fact. After several evaluations, the Bureau of Prisons determined that he is not dangerous and poses no risk of injury to another person or to another person's property.

If failing to register were a strict liability offense, that alone would not outweigh Cover's Due Process rights. *Jackson* requires a "reasonable relation" between a mentally-ill defendant's continued pretrial detention and "the purpose for which he is committed." 406 U.S. at 738. If Cover was competent and able to accept the government's plea agreement, which prescribes a total offense level of 9, Cover would receive a 12-to-18 month sentence. This sentence has already been served. Alternatively, if Cover were convicted and sentenced today, his offense level would be 14. (*See* Def.'s Reply (#88) at 6:9–14). This carries a 27-to-33 month sentence. Cover has already served more than the low end of this sentence. (*Id.*) Finally, if Cover's pretrial detention were extended, and medication forcibly injected, then Cover will have served time nearing the high end of this sentence. These facts render Cover's continued detention unreasonable. *Jackson*, 406 U.S. at 738; 18 U.S.C. § 4241(d)(2).

Section 4241(d)(2) provides the court with "considerable discretion in making case-by-case determinations as to what a reasonable period of additional custodial hospitalization" should be. *Magassouba*, 544 F.3d at 406. The only clear limit is the Due Process Clause, which "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738. Normally, four months would be reasonable. But, this case is not normal. The government has offered a plea agreement that no reasonable defendant would refuse. It offers freedom for time served. But, Cover is not reasonable. He is schizophrenic and cannot accept the agreement as a matter of law.

To date, Cover has been detained awaiting trial for 784 days. The Bureau of Prisons determined that he is not dangerous person and poses no risk of injury to another person or to another person's property. Were he to accept the government's plea agreement or proceed to trial, the result would be identical: release for time served. Cover's Motion to Dismiss, therefore, should be granted. *See Jackson*, 406 U.S. at 738.

## II.     Whether the Government May Forcibly Medicate Cover

The parties' filings present a second question: whether the government may forcibly medicate Cover under *Sell v. United States*. Because the court recommends dismissing the government's indictment and releasing Cover under *Jackson v. Indiana*, this inquiry is moot. Nonetheless, the court briefly addresses the government' request to forcibly medicate Cover.

Under limited circumstances, "the Constitution permits the Government to involuntarily administer antipsychotic drugs to a mentally-ill defendant facing serious criminal charges in order to render that defendant competent to stand trial." *Sell*, 539 U.S. at 179. This is only permissible when (1) there are important government interests in trying the individual, (2) the treatment will significantly further those interests, (3) the treatment is necessary to further those interests, considering any less intrusive alternatives, and (4) the treatment is medically appropriate. *Id*. at 180–81. Each of these elements must be demonstrated by clear and convincing evidence. *Ruiz-Gaxiola*, 623 F.3d at 692.

As a preliminary matter, the court notes that it is unclear whether *Sell* applies. The Fifth Amendment provides the mentally ill with a "significant" liberty interest in "avoiding the unwanted administration of antipsychotic drugs." *Cooper*, 517 U.S. at 354. This right may be displaced if the government demonstrates a countervailing interest in "bring[ing] an accused to trial." *Riggins*, 504 U.S. at 135–36 (citing *Allen*, 397 U.S. at 347); *Sell*, 539 U.S. at 179 ("[T]he Constitution permits the

Government to involuntarily administer antipsychotic drugs to . . . render that defendant competent to stand trial.").

Here, the government requests forcible medication so that Cover may make a Hobson's choice: accept the plea agreement and be released or proceed to trial and risk additional incarceration at sentencing. Only one option is real: accepting the plea agreement and choosing freedom.

The government cites no authority that permits the government to forcibly medicate a criminal defendant for the purpose of choosing freedom. As discussed above, our country's founding documents demonstrate that there can be no valid authority for this proposition. No person bears the burden of securing their own freedom from the government. (*See supra* § II, p. 6, n. 3). This right is constitutionally presumed for all. Rather, the government bears the burden of justifying the deprivation of freedom, either by civilly committing or criminally convicting the defendant. When these options are unavailable, the Constitution mandates release. *Jackson*, 406 U.S. at 738.

Nonetheless, the court briefly addresses each prong of the *Sell* test below.

### A.     *The First* Sell *Prong*

The first *Sell* prong considers whether there are important government interests in trying the individual. *Sell*, 539 U.S. at 180. In *Sell*, the Supreme Court established that the government's interest in trying an individual charged with a serious crime is important whether the crime is against "a person or property." *Id*. However, this consideration must be weighed against "special circumstances," which would render forced medication constitutionally impermissible. *Id*.

The government cannot satisfy this balancing test. Although Cover's alleged crime is serious because it carries a possible ten-year sentence, the crime—failing to register as a sex offender—is not a crime against "a person or property." The Ninth Circuit described Cover's alleged crime as a "purely regulatory offense" that "involve[s] neither violence nor threat of violence to any person" and requires

11

"actual knowledge of the duty to register." *Duncan*, 551 F.3d at 885–86 (citing *inter alia Helm*, 463 U.S. at 292).

The government cites *United States v. Nicklas*, 623 F.3d 1175, 1177–78 (8th Cir. 2010) for the proposition that Cover poses a threat to the public, warranting the forcible administrating of drugs. (*See* Doc. (#86) at 5:18). *Nicklas* involved a "misdemeanor terroristic threat" under state law and a subsequent prosecution under 18 U.S.C. § 875(c) for transmitting interstate threats. 623 F.3d at 1175. Cover's alleged crime—failing to register as a sex offender—is incomparable. No threat exists here: the Bureau of Prisons determined that Cover is not dangerous and poses no risk of injury to another person or to another person's property. (Aug. 14, 2014 Eval. at 1).

Even if Cover's alleged offense were a serious crime against a person or property, the first prong's balancing test would militate in Cover's favor because "special circumstances" abound. *Sell*, 539 U.S. at 180.[5] As discussed above, Cover has been incarcerated for more than the two-year sentence proposed by the government's plea agreement. Because Cover is homeless and schizophrenic, it is inevitable that he will relapse, even if forcibly medicated. These facts strongly militate in preserving Cover's Fifth Amendment liberty interest to be free from "the unwanted administration of antipsychotic drugs." *Cooper*, 517 U.S. at 348.

**B.**   ***The Second* Sell *Prong***

The government also failed to demonstrate the second prong—(*viz.*, that the treatment will significantly further the government's interests)—by clear and convincing evidence. A proposed treatment plan significantly furthers an important government interest if the treatment (1) is "substantially likely" to restore the defendant to competence while (2) being "substantially unlikely" to cause side effects that will interfere significantly with the defendant's ability to assist in his defense."

---

[5] The government did not address this half of *Sell's* balancing test. (*See* Doc. (#86) at 5–6).

*Sell*, 539 U.S. at 181. No controlling case law defines "substantially likely" with precision. *United States v. Decoteau*, 857 F. Supp. 2d 295, 304 (E.D.N.Y. 2012).

The government failed to satisfy this element for two reasons. First, the government cannot satisfy this element as a matter of law because it failed to demonstrate that there are important government interests in trying Cover. (*See supra* § II.A). Second, assuming, *arguendo*, that the government demonstrated an important interest, it cannot show by clear and convincing evidence that forcible medication will further those interests. Forcible medication will only achieve what the court recommends here: Cover's release.

Additionally, if Cover were forcibly medicated, relapse is inevitable. (*See* Doc. (#51-1) at 12) (stating that if Cover is forcibly medicated, there is a 60-to-70% chance that he will relapse within one year and a 90% chance that he will relapse within two years). This indicates that there is a substantial likelihood that forcible medication will achieve little.

### C.   *The Third & Fourth* **Sell** *Prongs*

The third and fourth *Sell* prongs consider whether there are any less intrusive alternatives and whether the treatment is medically appropriate. *Sell*, 535 U.S. at 180–81. There is little dispute regarding these two prongs. Without forcible medication, the Bureau of Prisons reports that Cover's "prognosis for improvement is poor." (Doc. (#51-1) at 7). Similarly, there is no dispute that treatment for schizophrenia with antipsychotic drugs is medically appropriate. (*Id.* at 19–24) (discussing the third and fourth *Sell* prongs from a medical perspective).

/// /// ///

/// /// ///

/// /// ///

/// /// ///

13

## CONCLUSION

This matter is about fundamental fairness and due process. Cover has been detained awaiting trial for 784 days. The Bureau of Prisons reports that he is not dangerous and poses no risk of injury to people or property. The government has offered Cover a plea agreement that would set him free. But, Cover is schizophrenic and cannot accept the plea agreement as a matter of law.

As a result, the government asks the court to place a significant burden on Cover, prolong his pretrial detention, and inject him with drugs against his will. The process would take months. Success is uncertain. And, the injections would be administered against his Fifth Amendment rights. If Cover's competency were restored, the outcome would remain unchanged: Cover would be released, either because he would have accepted the government's plea agreement or because he would have been convicted and sentenced to time served.

A criminal defendant's pretrial detention cannot be prolonged merely because that defendant is mentally ill. *Jackson*, 406 U.S. at 738. The government "must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Id*. Cover cannot be civilly committed. Therefore, the Constitution mandates his release.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the court's October 7, 2014, hearing is VACATED.

IT IS RECOMMENDED that Lonnie Earl Cover's Motion to Dismiss (#83) be GRANTED.

IT IS FURTHER RECOMMENDED that Lonnie Earl Cover be RELEASED.

DATED this 3rd day of October, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE